SILVERBLATT et al. v. BROOKLYN TELEGRAPH & MESSENGER CO.

(Supreme Court, Appellate Division, Second Department. April 12, 1912.)

1. EVIDENCE (§ 67*)—PRESUMPTIONS—CONDITION OF APPLIANCES.

Where a burglar alarm system installed in a store by a contractor was shown to have performed its functions for several months and up to the evening of an alleged burglary of the store, the presumption arose that the system continued in such condition until the contrary was shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

2. CONTRACTS (§ 322*)—PERFORMANCE—DEFECTIVE APPLIANCES.

A contractor installed a burglar alarm system in a store. For several months it performed its functions, and on the morning after a burglary of the store the system was in working order. The proprietor of the store might have disconnected the system, and failed to make the proper adjustment on leaving the store on the evening of the night of the burglary. Held to show as a matter of law that the system was in order at the time of the burglary, and the contractor was not liable for the loss occasioned by the burglary, the contract of installation contemplating that the system might get out of order, in which case the contractor would furnish a watchman.

[Ed. Note.—For other cases, see Contracts. Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492; Dec. Dig. § 322.*]

3. DAMAGES (§ 18*)—PERFORMANCE OF CONTRACT—DEFECTIVE APPLIANCES—DIRECT CONSEQUENCES.

A contract employing a contractor to install and maintain a burglar alarm system in a store contemplated that the system might get out of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

order, in which event the contractor would furnish a watchman. The system performed its functions up to the evening of an alleged burglary, and was found to be in working order on the morning following the burglary. *Held* that, though the system failed to properly work on the night of the burglary, the contractor was not liable in tort for the loss of goods occasioned by the burglary, since the loss was not the proximate result of the failure of the system.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 37; Dec. Dig. § 18.*]

Appeal from Kings County Court.

Action by Joseph Silverblatt and another against the Brooklyn Telegraph & Messenger Company. From a judgment of the Kings County Court (73 Misc. Rep. 38, 132 N. Y. Supp. 253), for plaintiffs, rendered on a special verdict, and from an order denying a new trial defendant appeals. Reversed and new trial ordered.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Francis Raymond Stark (George H. Fearons, on the brief), for appellant.

Charles J. Ryan, for respondents.

WOODWARD, J. The complaint in this action alleges that:

"On or about the 13th day of October, 1905, the plaintiffs under and by a certain writing and upon a consideration therein specified did employ the defendant herein to install upon and equip the store premises occupied by them, No. 895 Broadway, city of New York, borough of Brooklyn, its system of electric wiring, and to connect the same with its office in such manner that, when the premises were intrusted to its care, any breaking or entry thereof would be immediately communicated to the said office by means of certain alarm bells; and they did also employ the defendant to watch and vigilantly observe said signals, and immediately ·upon any such signal being received to investigate the occasion thereof, and by such means to safekeep and guard and protect the plaintiffs' premises and their goods therein."

It is then alleged that the defendant accepted this employment, that the plaintiffs performed all the conditions of said contract of employment, and that the—

"defendant did so carelessly and negligently maintain said wiring and signals, and did so negligently and carelessly watch and observe and fail to watch and observe the said signals, and did so negligently and carelessly perform its duties of guarding and protecting plaintiffs' premises and their goods therein, that by reason thereof, and on the 18th day of March, 1906, and while said premises and goods were in defendant's care, certain persons, to plaintiffs unknown, broke and entered plaintiffs' premises through a trapdoor therein and included within the defendant's system of wiring and signals, and stole and carried away the plaintiffs' goods; that, owing to the aforesaid carelessness and negligence, the said breaking and entering was unimpeded and uninterfered with, and the defendant failed and neglected to guard and safekeep the plaintiffs' store and goods, whereby the plaintiffs were permanently deprived of their goods, to the reasonable value and their damage of $554.50, and the costs of this action."

The defendant, answering, admits that "in or about August, 1905, a contract was made and entered into between the plaintiffs and the defendant, whereby the defendant agreed, in consideration of the payment by the plaintiffs to it of the sum of $120 per annum, in equal

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

monthly installments, to apply its system of electrical protection against burglary to the safe cover and windows at plaintiffs' premises, No. 895 Broadway, Brooklyn, concealing therein its recording instruments and connecting the same with its central office, to keep said apparatus constituting said protection in working order, and, in connection with its said central office, to send a police officer immediately to the premises of the plaintiffs should an attempt be made to enter the premises so guarded, which police officer was to enter the building and examine the same," etc., and denies the further allegations of the complaint as above quoted. The defendant further admits that it accepted the employment under the terms of the contract mentioned in its answer, but denies that it accepted employment under the conditions named by the plaintiffs, and sets up separate defenses alleging performance of its part of the contract.

It is evident from the pleadings, and from the course of the trial—and it is urged on this appeal by the plaintiff—that the action is one sounding in tort, that the plaintiffs have sought to recover for an alleged breach of contract on the theory that by a breach of the contract the defendant has become liable in tort for the resulting damages. The jury has found the facts as to which they were requested to find in favor of the plaintiffs' theory, and upon this special verdict judgment has been entered, charging the defendant for the alleged value of goods said to have been taken from the plaintiffs' store while equipped with the defendant's burglar alarm system. The contract which is in evidence does not support the plaintiffs' contention that the defendant became a practical insurer of the goods in the plaintiffs' store. It merely provides for the installation of the burglar alarm system, and provides what the defendant is to do in the way of affording protection in the event of an alarm call, or in the event of the system being out of order. There is no substantial difference in law between this contract and one made by a company to install a sprinkling outfit in a manufacturing plant, and to keep the same in order, and it would be rather a startling doctrine, we apprehend, to hold that such an installation called upon the installing party to become the insurer of the premises against fire by reason of a failure of the system to work properly upon a given occasion, without notice of any defect in the system.

[1, 2] The burglary in question is alleged to have occurred some time during the night of March 18, 1906, or before the morning of the 19th of March, and the plaintiffs' own witness, one of the plaintiffs, testifies that he entered the store on the morning of the 18th of March, the day being Sunday, to turn off a light which had been left burning the night before, and that the alarm system was working at that time, as he received and answered a signal. He likewise testifies that he visited the store on Sunday evening to turn on the same light, and that he then exchanged signals with the defendant's office, so that it appears that up to the very evening of the alleged burglary the system was in place and answering to the law of its being. It was performing its customary and proper functions. Under such conditions, the presumption would arise that it continued in that condition until the contrary was shown. 22 Am. & Eng. Ency. of Law,

1238, and authorities cited in note. To this presumption is to be added the fact that the defendant's expert electrician visited the premises on the following morning and examined the apparatus, and he testifies, without contradiction, that the system was then in working order. It appears from the testimony that this could be possible only in the event that the trapdoor was opened from the inside, and one of defendant's witnesses corroborates the plaintiff in his testimony that the signal was given when plaintiff entered the store on Sunday evening, and that the response was sent from the defendant's central office, but this witness, who remembers the fact of the opening signal, testifies that he does not remember the closing signal being given on the particular Sunday evening, and there is no evidence in the case that any such signal was given, so that there is room for the inference that the plaintiffs' premises were opened by one of the plaintiffs, and that he did not close the same at any time prior to the alleged burglary. At least, the plaintiffs have failed to show that the system was out of order. They conceded that a witness who could not be found and who had charge of the office on the night in question for the defendant, would testify, if present, that no alarm bell sounded in the office of the defendant during that night, and this is not disputed, while it is equally undisputed that the defendant's expert found the system in working order on the morning following the alleged burglary, and this was concededly its condition on Sunday evening, with the presumption that it continued until a different state of facts was established. No such evidence appears in the case. It is nowhere testified that the system was out of order either at the time of the alleged burglary or at any time subsequent thereto. The evidence as it appears is that the system was in working order on Sunday evening, March 18th, prior to the alleged burglary, and that it was in order on Monday morning after the alleged burglary was discovered, so that upon the question of the defendant's negligence the case is without evidence to support it.

But, assuming that the system was out of order, that by some unexplained cause the same became defective on Sunday evening after the plaintiff entered the store and received the proper signal, and that it mysteriously adjusted itself in the morning after the alleged burglary, was this such negligence on the part of the defendant as would charge it with liability? It is evident from the contract that it was contemplated that the system might get out of order, and to this end it was agreed that in such an event the defendant would furnish a watchman who should be satisfactory to the plaintiffs. This clearly contemplated that the defendant was to have notice of the defect in the system, and, the same having concededly been in working order the last time the plaintiff visited the premises on Sunday evening, it was hardly to be expected that the defendant would make an inspection after that time. By the system of signals both parties had notice that it was working correctly only a few hours before the alleged burglary, and the defendant had a right to rely upon the presumption that this condition would continue, and the only evidence in the case is to the effect that it did continue, for it cannot be presumed that it was out of order because it was shown that no bell rang in the defendant's office, when it appeared that the disturbance could

have been made from the inside without an alarm, and it was not shown that the disturbance did not occur from the inside of the building, with the apparatus cut off by the plaintiff opening the door with his key and getting the signal. It was not shown that the plaintiff closed the door properly after opening it, and, if he did not, the whole system would be disconnected, though in proper condition for the performance of all its functions. It is not necessary to suggest that the plaintiff had anything to do with the burglary. It is enough that the evidence fails to show that the system was out of order. The plaintiff on entering may have disconnected the system and failed to make the proper adjustment on leaving, or some one may have followed him in unobserved and operated from the interior of the store, or some other person may have had a key and may have been familiar with the system, and it is not proper that a jury should charge the defendant with liability for the plaintiffs' goods under such evidence.

[3] But beyond this, and assuming that the system was not in order, the loss of the goods was not shown to be the proximate result of the failure of the system. In other words, the defendant had nothing whatever to do with the burglary. The proximate cause of the loss to the plaintiffs was not the alleged failure of the alarm to work, but the affirmative act of third persons, acting in violation of the criminal laws of the state. In other words, the failure of the system to work did not cause any loss to the plaintiffs. It may have failed to prevent the consummation of the crime, but the defendant never assumed the duty of doing this. It merely assumed the duty of putting in a system, the merits or demerits of which were presumptively open to the plaintiffs, and, in the event of getting an alarm, to use the degree of care provided in the contract to intervene to prevent the consummation of a crime, but they neither undertook to guarantee the system to work under all circumstances, or absolutely to prevent the commission of the crime of burglary. They may have assumed liability for negligence, but only in the event of such negligence as the law takes notice of, and we know of no case in which the courts have held persons or corporations liable for injuries which were not due to a cause for which the defendants were responsible. Here the plaintiffs' loss is due, not to any defect in the system installed, but to the fact that third persons, acting outside and independently of the defendant, entered the plaintiffs' store by some methods which did not operate the alarm system, and carried away certain goods, if this was in fact done. No neglect of the defendant in reference to its system of alarms could be construed as an invitation to third persons to commit a crime, and without the commission of this crime the plaintiffs could suffer no loss, so that, under all of the authorities, the plaintiffs have no right to recover in this action upon the theory on which it was presented to the court and tried. Not only was the alleged neglect of the defendant not a proximate cause of the injury, but it was not a concurring cause. "It seems to me," says the court in Leeds v. New York Telephone Co., 178 N. Y. 118, 121, 70 N. E. 219, 220, "that guilty or responsible concurrence in causing an injury involves the idea of two, or more, active agencies, co-operating to produce it; either of which must be

an efficient cause, without the operation of which the accident would not have happened." The failure of the system could not produce a burglary. If the system had been actually taken out by the defendant on the Sunday before the alleged burglary, it would not have been capable of producing the alleged crime. It was only when some third person or persons—if it actually occurred—entered upon the crime that the plaintiffs were exposed to any danger of the loss, and the only liability of the defendant under such circumstances would be for the breach of the contract and not for the losses actually sustained, as in a tort.

The judgment and order of the County Court of Kings County should be reversed, with costs.

Judgment and order of the County Court of Kings County reversed, and new trial ordered, costs to abide the event.

HIRSCHBERG and RICH, JJ., concur. JENKS, P. J., and BURR, J., concur in the result, on the ground that the finding of the jury that defendant's apparatus was defective is against the weight of the credible evidence.